IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SEAN D. O., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO,[1] <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 24-cv-00587-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Sean D. O. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, 1381–1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[2] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[3] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek*

---

[2] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.)

[3] *See generally* 20 C.F.R. § 416.960 for Title XVI.

*v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff protectively filed for Title II and Title XVI disability benefits on July 8, 2022. (R. 10, 212–19.) In his applications, Plaintiff alleged he has been unable to work since either July 1, 2019 (Title II), or August 15, 2021 (Title XVI), due to conditions including swollen liver from blood poisoning; shortness of breath; and an inability to walk long distances. (R. 212, 214, 260.) Plaintiff was 55 years old on his date last insured and 57 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 13, 26, 212.) He has less than a high school education and past relevant work as a hand packager, tire repairer, building maintenance repairer, and house repairer. (R. 53–54, 261.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 116–34, 140–54.) Plaintiff then requested and received a hearing before an ALJ. (R. 39–71, 158–60.) The ALJ denied benefits and found Plaintiff not disabled. (R. 10–26.) The Appeals

Council denied review on October 4, 2024 (R. 1–5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[4]  Plaintiff now appeals.

## III. The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2022.  (R. 13.)  The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since July 1, 2019.  (*Id.*)  At step two, the ALJ found Plaintiff had the following severe impairments since November 2, 2022: (1) hypertension; (2) obesity; (3) depressive disorder; (4) stimulant use disorder; and (5) posttraumatic stress disorder.  (*Id.*)  The ALJ determined Plaintiff's degenerative disc disease was not a severe impairment.  (*Id.* at 13–15.)  At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment.  (R. 16–18.)

The ALJ then determined that Plaintiff had the RFC to perform medium work with certain mental limitations and the additional limitation that he "cannot have exposure to hazards such as work around moving mechanical parts and high, exposed places."  (R. 18.)  The ALJ provided a recitation of the evidence that went into this finding.  (R. 18–24.)  At step four, the ALJ found Plaintiff unable to perform his past relevant work.  (R. 24.)  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Laundry Worker I and Floor Waxer.  (R. 25.)  Accordingly, the ALJ concluded Plaintiff was not disabled.  (R. 25–26.)

---

[4] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

**IV.    Issues**

On appeal, Plaintiff argues the ALJ erred by failing to evaluate his degenerative disc disease beyond step two, or to otherwise account for the impairment in the RFC. (ECF No. 10 at 7–12.)  The Court finds no reversible error.

**V.    Analysis**

    **A.    Step Two**

As a preliminary matter, to the extent Plaintiff argues his "degenerative disc disease should have been found severe" at step two (*id.* at 8), such an argument is easily disposed of here where the ALJ made explicit finding that Plaintiff had other severe impairments.  *See Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)).[5]

> Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

*Id.* (citation modified); *see also Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe").  The ALJ found Plaintiff suffered from multiple severe impairments at step two.  (R. 13.)  As such, there was no reversible error at step two.

    **B.    Consideration of Degenerative Disc Disease After Step Two**

Recognizing this, Plaintiff's arguments focus on the ALJ's purported errors in formulating the RFC.  (ECF No. 10 at 8.)  Specially, Plaintiff asserts the ALJ failed to offer

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

any explanation for how this non-severe impairment was considered in making the RFC. (*Id.* at 9.) Having reviewed the ALJ's decision, the Court disagrees.

### 1. RFC – Generally

To proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1).[6] The claimant's RFC is what's left—"the most [the claimant] can still do despite [his] limitations." *Id.*

In assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including [those] that are not 'severe' . . . when we assess your residual functional capacity."). The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id.* § 404.1520(e). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. *Id.* § 404.1513(a).[7]

The RFC is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *3 (July 2, 1996). The analysis must include "a narrative discussion describing how the evidence supports each conclusion, citing specific

---

[6] *See generally* 20 C.F.R. § 416.945 for Title XVI.
[7] *See generally* 20 C.F.R. § 416.913 for Title XVI.

medical facts . . . and nonmedical evidence," and "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id*. at *7. The narrative discussion is adequate "where the ALJ discussed all of the relevant medical evidence, none of the record medical evidence conflicted with the RFC, and substantial evidence in the record supported the RFC." *Cochran v. Colvin*, No. 13-CV-726-GKF-FHM, 2015 WL 966495, at *3 (N.D. Okla. Mar. 4, 2015) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)).

### 2.   ALJ's Assessment of Plaintiff's Degenerative Disc Disease

Here, the ALJ's RFC assessment—including her consideration of Plaintiff's degenerative disc disease—was adequate. While her analysis of the evidence and testimony surrounding Plaintiff's non-severe impairments occurred under the decision's heading for step two (R. 13–16), the ALJ went beyond the required step-two considerations and evaluated the effect of Plaintiff's degenerative disc disease on his functional capacity (*id*).

When discussing Plaintiff's "nonsevere impairment of degenerative disc disease," the ALJ considered Plaintiff's hearing testimony regarding back and shoulder pain (R. 13); imaging of his thoracic spine and subjective complaints of pain upon examination (R. 14); medications taken for back pain (14–15); recent imaging of his lumbar spine (R. 15); subjective reports of activities such as regular walking in 2023 and walking up to two miles a day in 2024 (*id*.); presentation with normal gait, intact sensation and reflexes, and preserved strength on physical exam (*id*.); and lack of subjective pain reports or observable objective symptoms during his consultative examination ("CE") in 2023 (*id*.). Taken together, this evidence—all of which was also appropriate for consideration at the RFC stage—led the ALJ to conclude that Plaintiff's degenerative disc disease was "a nonsevere impairment" which "no more than minimally [affected his] ability to

independently initiate and sustain basic work activities." (*Id.*) Had the ALJ's analysis stopped there, perhaps the decision would have required reversal. But it did not.

After considering other impairments in detail, the ALJ noted that though they were not severe, she had "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (R. 16.) The ALJ then added additional detail, explicitly tying her assessment to the RFC:

> Specifically, the undersigned has considered the claimant's . . . degenerative disc disease in assessing a reduced residual functional capacity for medium exertion with no exposure to hazards such as work around moving mechanical parts and high, exposed places.

(*Id.*)

Contrary to Plaintiffs' arguments, "the ALJ's discussion at step four" did <u>not</u> "largely omit[] any discussion of [Plaintiff's] back impairment." (ECF No. 10 at 9.) Rather, the ALJ's discussion simply occurred in more than one section of her decision. Plaintiffs' reading of the ALJ's opinion is unreasonably narrow. The Court "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Where the Court "can follow the adjudicator's reasoning . . . and can determine that correct legal standards have been applied, merely technical omissions . . . do not dictate reversal."[8] *Id.*

As such, the ALJ's consideration of Plaintiff's degenerative disc disease was acceptable. Because Plaintiff does not raise another point of error on appeal, the decision will be affirmed.

---

[8] This is not a case where the Court must consider whether to supply a missing dispositive finding under the harmless error rubric. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### C.  Development of the Record

Although not raised as an error, Plaintiff appears to argue that the ALJ's "failure to properly consider [his] degenerative disc disease likely resulted from her failure to develop the record related to this impairment." (ECF No. 10 at 10.) Plaintiff also states the ALJ should have developed the record, "[w]here the only opinions in the record predated the majority of [Plaintiff's] treatment for his back impairment and imaging . . . ." (*Id.* at 11.) Even had Plaintiff properly raised a development-of-the-record issue on appeal, however, the Court would have rejected it.

An ALJ has a basic obligation to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). Normally, the ALJ may "require counsel to identify the issue or issues requiring further development," because she should "be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). Plaintiff was represented by counsel at the hearing. (*E.g.*, R. 42.) Counsel did not identify any areas that required further investigation or otherwise challenge the sufficiency of the record regarding Plaintiff's degenerative disc disease.

The Court, therefore, will only find the ALJ under an obligation to further develop the record if Plaintiff clearly establishes that such a need exists. Plaintiff has not. Plaintiff notes that the prior administrative findings in the record, which found no physical impairments, predated material evidence regarding Plaintiff's spine. (ECF No. 10 at 10–11.) But the ALJ determined that those findings were unpersuasive precisely because of the newer medical evidence. (R. 23.) In assessing the effects of Plaintiff's disc degeneration, the ALJ appropriately relied on objective medical evidence and Plaintiff's subjective reports. (R. 13–16.)

Plaintiff also cites *Lena W. v. Saul,* No. 19-CV-0558-CVE-CDL, 2021 WL 537096, at *4 (N.D. Okla. Feb. 12, 2021), for the proposition that an ALJ has a duty to develop the record during a disability hearing. (ECF No. 10 at 11.) In *Lena*, however, the ALJ "relied on a lack of supporting medical evidence" to discount Plaintiff's symptoms, yet, "the absence of evidence . . . stemmed from the ALJ's own failure to order an MRI of plaintiff's cervical spine . . . as recommended by one of plaintiff's doctors . . . ." 2021 WL 537096, at *5–6. There was no such error here, where the ALJ appropriately relied on existing evidence in the record.

The Court finds no error in the ALJ's development of the record.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is AFFIRMED.

**SO ORDERED** this 28th day of October, 2025.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT